IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONNIE D. COMBER, #285952           :

      Petitioner           :

v           :           Civil Action No. WDQ-08-1793

JOHN WOLFE[1] and           :
DOUGLAS F. GANSLER

                                      :

      Respondents

o0o

MEMORANDUM OPINION

      Pending is Donnie D. Comber's pro se Petition for Writ of Habeas Corpus (Document 1), the State's response and exhibits (Document 11), and Comber's reply (Document 12). The Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *see also* 28 U.S.C. § 2254(e)(2). For reasons stated below, the Court will dismiss the Petition with prejudice, and deny a certificate of appealability.

Background

      On September 13, 1998, Theodore Briscoe, Jr., John Epps, Trone Ashford and Donnie Comber were in Briscoe's car on Horsehead Road in a rural area of Prince George's County, Maryland.[2] The group decided to "jump" and rob somebody, luring the person to stop by posing as if Briscoe's car had broken down. Paper No. 11, Exhibit 3 at 161-65; Exhibit 4 at 43-53, 67-76. 84-91. Briscoe pulled a shotgun from the trunk of the car; Epps produced a .45 caliber handgun. *Id.* Brently Youmans, who stopped to assist the group, was gunned down by both men

---

[1] The current Warden of Jessup Correctional Institution, John Wolfe, will be substituted as a party respondent.

[2] Ashford was Comber's cousin. Document 11, Exhibit 2 at 23-24, 34.The victim lived a mile or so from Horsehead Road. *Id.*, Exhibit 3 at 38-39. Comber lived on Horsehead Road before separating from his wife; then he lived at 2920 Nelson Place, S.E., in the District of Columbia, several blocks from where the victim's Ford Bronco was recovered by police. *Id.,* Exhibit 2 at 6, Exhibit 3 at 161-62, 164.

as he attempted to flee.  *Id.*  Comber and Epps fled in the victim's borrowed Ford Bronco; Ashford and Briscoe fled in Briscoe's vehicle.  *Id.*,  The victim's body was found several days later by the Bronco's owner.  *Id.*, Exhibit 3 at 48-49.

At trial, Comber testified that he was present at the scene of the crime but had not participated.  *Id.*, Exhibit 4 at 43-66.  The State impeached that testimony with statements made by Briscoe and Epps to the police.  *Id.*, Exhibit 4 at 68-72.

Procedural History

On May 20, 1999, the jury convicted Comber of felony murder, armed robbery, conspiracy to commit armed robbery, and use of a handgun in the commission of a crime of violence.  *Id.*, Exhibit 5 at 30-33.  On July 9, 1999, Comber was sentenced to life without parole for the murder and lesser terms for the other offenses. *Id.*, Exhibit 6 at 17-19.

On direct appeal Comber argued that the trial court erred by (1)  denying his motion to suppress statements to the police which were the fruit of an illegal arrest; (2) refusing to voir dire potential jurors about their involvement with victims' rights organizations; and (3) an erroneous supplemental instruction on aiding and abetting.  Paper No. 11, Exhibit 7 at 2.  Comber's convictions were affirmed by the Court of Special Appeals of Maryland on April 25, 2000, the court finding no error in (1) the failure to suppress Comber's statement, (2) voir dire; and (3) jury instructions.  Id., Exhibit 9 at 3-12.  Certiorari was denied by the Court of Appeals of Maryland on August 21, 2000.  *Id.*, Exhibits 10-11.  Comber did not appeal further.

On July 10, 2001, Comber filed a post-conviction petition in the Circuit Court for Prince George's County.  *Id.*, Exhibits 1 and 12.  The petition as supplemented alleged:

(1)     The trial court denied due process by restricting cross-examination;

(2)     Trial counsel was ineffective by allowing Comber to testify;

(3)     Appellate counsel was ineffective for failing to challenge

      a.     the denial of the motion for judgment of acquittal;
      b.     the admission of the statements of his co-defendants; and
      c.     the sufficiency of the evidence;

(4)     The State's Attorney committed misconduct by

      a.     contacting the coroner's office to change the autopsy report;
      b.     improper contact with a juror; and
      c.     improper comments during sentencing; and

(5)     The trial court improperly admitted evidence of charges faced by his
      co-defendants.

Document 11, Exhibits 12 and 13.  Following a hearing, the post-conviction court denied relief

in a written decision filed March 16, 2004.  *Id*., Exhibit 15.

Comber's application for leave to appeal was dismissed as untimely.  *Id*., Exhibit 17.

The dismissal was reconsidered and Comber's application for leave to appeal, as supplemented,

was examined on the merits and denied by the Court of Special Appeals in an unreported opinion

filed May 15, 2008.  The court's mandate issued on June 23, 2008.  *Id*., Exhibits 18-23.

Comber now raises the following claims in his federal habeas corpus petition:

(1)     The trial court denied him due process by restricting cross-examination of
      witnesses;

(2)     Trial counsel was ineffective by allowing Comber to testify at trial;

(3)     Appellate counsel was ineffective by failing to challenge:
      (a)     the denial of the motion for judgment of acquittal;
      (b)     the admission of the statements of his co-defendants; and
      (c)     the sufficiency of the evidence;

(4)     The State's Attorney committed misconduct by:

      (a)     contacting the coroner's office to effect a change in the autopsy report;
      (b)     having improper contact with a juror; and
      (c)     making improper comments at sentencing; and

(5)     The trial court erred by:

(a)     improperly admitting evidence of charges faced by his co-defendants;
(b)     denying his motion to suppress; and
(c)     issuing an erroneous supplemental instruction on aiding and abetting.

Document 1.

## Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), petitioners for federal habeas corpus relief must exhaust each claim in state court. Exhaustion is achieved by seeking review of the claim in the highest available state court. *See* 28 U.S.C. §§ 2254(b)-(c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of a post-conviction petition, followed by petitioning the Court of Special Appeals for leave to appeal. Comber no longer has any available state direct review or collateral review remedies available for the claims raised here. His claims will be considered exhausted for this federal habeas corpus review.

## Timeliness

Respondents do not contend - and the record does not show - that Comber's petition is time-barred.

## Procedural Default

A claim that has not been presented to the highest available state court by failing to raise it in post-conviction proceedings or on direct appeal or by failing to note a timely appeal, has been procedurally defaulted. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (failure to note timely appeal); *Murray v. Carrier*, 477 U. S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of

post-conviction relief).  Claims which have never been presented or were not exhausted properly in the state courts will not be examined on the merits if review of the claims in state court would be barred by state procedural rules.  *See Johnson v. Maryland*, 915 F.2d 892, 895 (4th Cir. 1990).

The bar is not absolute.  In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the Supreme Court held that consideration of a claim in a petition for habeas corpus may be barred by failure to comply with state procedural rules, unless the petitioner shows (1) cause for the failure and (2) resulting prejudice.  *See also Murray*, 477 U.S. at 495; *Engle v. Isaac*, 456 U.S. 107, 129 (1982).

If a petitioner cannot show cause and prejudice to excuse procedural default, the habeas court must still consider whether it should reach the merits of the petitioner's claims.  In appropriate cases, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " *House v. Bell*,  547 U.S. 518, 536 (2006), citing *Murray, supra*, at 495 (quoting *Engle*, *supra*, at 135).  This miscarriage of justice standard is directly linked to innocence.  *Schlup*, 513 U.S. at 320.  Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted.  *Id*. at 315.  The miscarriage of justice exception applies when a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*,  477 U. S. at 496.

Respondents argue that Comber failed to exhaust his claim that the trial court erred at sentencing by admitting evidence of charges faced by his co-defendants.  Document 1 at 7, Ground 5.  Comber raised this claim at his post-conviction hearing in the context of prosecutorial misconduct, and it shall be addressed in that context here.  Nothing in the record suggests that

Comber is innocent.  As the claim is procedurally defaulted, it will not be examined on the merits here.

Standard of Review

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> 1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in our cases."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).[3]  Section 2254(d) also requires federal courts to give great deference to a state court's factual findings.  *See Lenz v. Washington,* 444 F. 3d 295, 299 (4th Cir. 2006).  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary.   The applicant has the burden of rebutting the presumption of correctness.  A decision adjudicated on the merits in a state court

---

[3]    Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333,  n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curium*), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 at 412-413.  A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court   identifies the correct  governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

and based on a factual determination will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state court proceeding.   *See Miller-El v.*

*Cockrell*, 537 U.S. 322, 340 (2003).

Trial Court Restriction of Cross-Examination

Comber's trial was severed from co-defendants Epps, Ashford and Briscoe.   Comber

contends that the trial court denied him due process when it admitted his co-defendants'

statements without cross-examination.[4]   The post-conviction court recognized the argument was

based on an alleged violation of the Sixth Amendment under the Confrontation Clause and

Maryland law, and found:

> On direct examination at trial, the Petitioner testified that he read the statements made by Mr. Epps and Mr. Ashford prior to making his own written statement to police.  *See* Tr. 2, May 19, 1999, at pg. 62, line 8 through pg. 63 line 5.  On cross-examination, the Petitioner testified that he wrote his statement based on his co-defendants' statements.  *See id.* at pg. 66, line 16 through pg. 67, line 6.  He denied that his co-defendants' statements indicated that he participated in the crime.  *See id.* at pg. 65, line 7 through pg. 69, line 2.  The State sought to admit the co-defendants' statements to police without calling the co-defendants to the stand.  *See id.* at pg. 69, lines 3-5; pg. 70, lines 4-10; pg. 71 lines 2-3.  Despite defense counsel's objection, the trial judge admitted the co-defendants' statements.  *See id.* at pg. 71, line 4 through pg. 72, line 4.  The trial judge instructed the jury that the statements are admissible for a  limited purpose – to assess the Petitioner's credibility, not as substantive evidence.  *See id.* at pg. 72, lines 9-15.
>
> The Court finds that the statements were admissible as non-hearsay because they were not offered to prove the truth of the matter asserted.  *See* Maryland Rule 5-801.  The statements were admissible for the purposes of assessing the Petitioner's credibility and for impeachment.  *See* Maryland Rule 5-616.  The State was not required to call the Petitioner's co-defendants as witnesses and, therefore, the Petitioner was not denied his due process rights when he was not able to cross-examine his co-defendants concerning their statements to police.
>
> The Court further points to *Tennessee v. Street*, 105 S.Ct. 2078 (1985), which is directly on point with the case at hand.  In *Tennessee*, the United States Supreme

---

[4] Comber complains that although certain of his co-defendants' statements were provided to the jury, other statements (presumably not inculpatory) were not presented.  This argument was not raised on post-conviction and will not be considered here.

7

Court held that a defendant's right to confront witnesses against him was not violated by the introduction of an accomplice's confession for the non-hearsay purpose of rebutting the defendant's testimony that his own confession was coercively derived from the accomplice's statement. *See Tennessee,* 105 S.Ct. at 2083. The Supreme Court stated that, "[t]he nonhearsay aspect of [the accomplice's] confession – not to prove what happened at the murder scene but to prove what happened when the respondent confessed – raised no Confrontation Clause concerns." *See id.* at 2081-82. In *Tennessee,* the trial court gave a limiting instruction to the jury that the accomplice's statement was not to be used for the truthfulness of the statements. *See* id. at 2082. The Supreme Court noted that there is an assumption that jurors are able to follow the court's instructions. *See id.* at 2082 and n.6. This assumption applies when rights guaranteed by the Confrontation Clause are at issue. *See id.* at n.5. The trial judge's instructions were held to be the appropriate means of limiting the jury's use of the evidence in a manner consistent with the Confrontation Clause. *See id.* at 2083. The same can be said of the Petitioner's case. The trial judge appropriately admitted the Petitioner's co-defendants' statements as non-hearsay and instructed the jury to consider the statements for the sole purpose of assessing the Petitioner's credibility. The Petitioner is not entitled to post-conviction relief on this ground.

Document 11, Exhibit 15 at 7-9.

In *Crawford v. Washington,* 541 U.S. 36 (2004), the Supreme Court held that the testimonial statement of a person who is not called as a witness may not be admitted against the accused for its truth unless the declarant is unavailable, and the defendant had a prior opportunity to examine the witness. Here, however, the statements were not introduced for the truth of the matter asserted, but to impeach Comber's testimony. Further, the trial court instructed jurors to limit their assessment of the statements to that purpose. Document 11, Exhibit 4 at 68-72. This use did not offend the Confrontation Clause, *see Crawford,* 541 U.S. at 59 n. 9; *see also Tennessee v. Street,* 471 U.S. 409, 414 (1985), and is not a basis for habeas relief.

Ineffective Assistance of Trial Counsel

The right to effective assistance of counsel is protected by the Sixth Amendment. Constitutional ineffective assistance of counsel claims are governed by *Strickland v. Washington,*

466 U.S. 668 (1984).[5] To prevail on a claim of ineffective assistance of counsel, a petitioner must show his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland,* 466 U.S. at  687.  To demonstrate actual prejudice, a petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694.  There exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in  scrutinizing counsel's performance.  *See id.* at 688-89. A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101(1955)).  Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697.

At his post-conviction hearing, Comber testified that counsel should not have allowed him to testify at trial, as it opened the door for the prosecution to introduce Comber's co-defendants' statements.  Document 1 at 6, Ground 2.

The post-conviction court did not find the testimony persuasive and denied relief, finding:

> The testimony presented at the post-conviction hearing indicates that trial counsel advised the Petitioner concerning the questions that could be asked by the State.

---

[5] The Court reaffirmed and applied these standards in  *Bell v. Cone*, 535 U.S.685 (2002):

For respondent to succeed, however, he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly.  *See Williams, supra*, at 411.  Rather, he must show [the state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Id*. at 698-9.

According to the Petitioner's testimony at the post-conviction hearing, trial counsel advised him that if he took the stand, the State could bring up his background and question him regarding the case.

Furthermore, the testimony provided by the Petitioner and trial counsel at the post-conviction hearing suggests that trial counsel advised the Petitioner of the potential consequences of him testifying at trial and that the Petitioner understood these consequences prior to taking the stand. Trial counsel testified that, prior to trial, he gave the Petitioner the discovery packet, which included Mr. Epp's and Mr. Ashford's statements to police, as well as the Petitioner's own statement to police. The Petitioner acknowledged receipt of this discovery packet and indicated that he had the opportunity to read them. Trial counsel testified that he reviewed these statements with the Petitioner. Additionally, trial counsel testified that he advised the Petitioner that he thought that his case would be severed from the co-defendants' cases and the State could attempt to use the co-defendants' statements in Petitioner's trial. Being aware that the Petitioner planned to testify that he had copied his co-defendants' statements into his own statement to police, trial counsel advised the Petitioner that the State could then use the co-defendants' statements against him, ask him to review them, and admit them into evidence. According to both trial counsel and the Petitioner, this same advice is what led the Petitioner to elect not to testify at the motions hearing.

The Court finds that the advice provided by counsel concerning whether or not the Petitioner should testify at trial did not fall below an objective standard of reasonableness. The Court finds that counsel consulted with the defendant regarding whether or not to testify and advised the Petitioner about relevant facts and law governing the case. The Petitioner has failed to show that he did not understand his rights regarding testifying at trial. The Court finds that trial counsel was not ineffective in his advice regarding whether the Petitioner should take the stand at trial.

Document 11, Exhibit 15 at 13-14. These findings are supported by the record and are presumed correct. Comber is not entitled to relief on this claim.

Ineffective Assistance of Appellate Counsel

An ineffective assistance of appellate counsel claim may be considered in a State post-conviction petition under *Srickland*. That there were non-frivolous claims for appellate relief not raised by counsel does not, by itself, establish defective performance. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000) (appellate counsel's role is to select among non-frivolous grounds for appeal, choosing those that maximize the likelihood of success on appeal). "[W]hether to raise

an issue on appeal is quintessentially a tactical decision of counsel". *Oken v. State*, 343 Md. 256, 271, 681 A. 2d 30, 37 (1996).   The Maryland courts have held that, in examining appellate grounds that were not raised, the proper approach is to look at "[s]ignificant issues which could have been raised" and compare them "to those which were raised." *State v. Gross*, 134 Md. App. 528, 562, 760 A. 2d 725, 743 (2000) *citing Gray v. Greer*, 800 F. 2d 644, 647 (7th Cir. 1986). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id*.

Comber claims appellate counsel failed to challenge (1) the denial of the motion for judgment of acquittal,  and (2) sufficiency of the evidence for his convictions.  As to the first claim, when Comber put on a defense at trial, his motion for judgment of acquittal at the close of the State's case was withdrawn as a matter of law under Maryland Rule 4-324 and *Fraidin v. State*, 85 Md. App. 231, 245 (1991).  As to the sufficiency of the evidence claim, the post-conviction court found that:

> [a]ppellate counsel made a tactical decision to raise other issues on appeal and could reasonably believe the argument would fail.  Additionally, the Petitioner failed to assert that he was prejudiced by appellate counsel's failure to challenge the conviction on the basis of insufficient evidence.

Document 11, Exhibit 15 at 18. The standard for analyzing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The evidence clearly supports the conviction under Maryland law and does not offend *Jackson* and its progeny;[6] accordingly, Comber is not entitled to relief on this ground.

---

[6] *See, e.g., Wright v. West*, 505 U.S. 277, 296-97 (1992) (deference owed to trier of fact; constitutional sufficiency review limited, with all evidence to be considered in light most favorable to prosecution).

Comber also alleges that appellate counsel was ineffective for failing to challenge the admission of Ashford's and Epp's statements.  The post-conviction court rejected this claim, finding that appellate counsel made a tactical decision to raise other issues and could  have reasonably believed that this argument would fail.[7]  Document 11, Exhibit 15 at 16-17.   As Epps's and Ashford's statements were admissible for the purpose offered, this finding is correct under *Strickland* and *Smith*.

## Prosecutorial Misconduct

Comber alleges the prosecutor improperly contacted the medical examiner's office to change the autopsy report.  Assuming this claim states a due process violation, the claim is not supported by trial testimony of Dr. Steven Radentz that "he was not directed by the State to change the autopsy report."  Document 11, Exhibit 15 at 19-20, citing Exhibit 3 at 85-91.  The post- conviction court concluded the record confirmed that the prosecutor "did not contact the coroner's office for the purpose of having the autopsy changed to fit their case."  *Id*., Exhibit 15 at 19.  There is no showing of a change in the autopsy report, nor how it would be relevant to Comber's claim of innocence.  As the state court findings are supported by the record, they will be accepted here.

Comber also alleges the prosecutor had improper contact with a juror.  As noted by the post-conviction court, the claim is refuted by the record, which shows only a defense complaint about a juror who knew a forthcoming witness.  The juror was removed and replaced with an alternate before the witness testified in the State's case-in-chief.  *Id*., Exhibit 4 at 5-12 and

---

[7] The post-conviction court noted that the statements were used to impeach Comber's testimony that his co-defendants did not implicate him as a participant in the crime, and that the statements were admitted over trial counsel's objection.  The post-conviction court also noted that the trial court instructed the jury that the statements were admitted solely to assess Comber's credibility and were not substantive evidence.  These findings further bolster the post-conviction court's finding that appellate counsel made a tactical decision not to press the claim on direct appeal.  *Id*., Exhibit 15 at 16-17.

Exhibit 15 at 19-21.  The post-conviction court found no misconduct; that finding is supported by the record.

Comber claims the prosecutor made improper remarks at sentencing about an unrelated robbery.  Remarks by the prosecution do not necessarily mandate a new trial, unless they so infect the proceeding with unfairness that the resulting conviction is a denial of due process.  *See Darden v. Wainwright*, 477 U.S. 168 (1986); *United States v. Weatherless*, 734 F.2d 179 (4th Cir. 1994).  In determining whether improper prosecutorial comments so damaged the proceeding as to require reversal, this Court must consider (1) the degree to which the comments were misleading and prejudiced the accused; (2) whether the comments were isolated or extensive; (3) whether competent proof established guilt, irrespective of the comments; and (4) whether the comments were deliberately made to divert attention to extraneous matters.  *See United States v. Harrison*, 716 F.2d 1050 (4th Cir. 1983); *United Staes v. Brockington*, 849 F.2d 872 (4th Cir. 1988); *United States v. Odom*, 736 F.2d 104 (4th Cir. 1984).  Here, the jury had determined guilt based on overwhelming evidence. Furthermore, the sentencing court denied the State's attempt to present evidence of the robbery at sentencing.  Document 11, Exhibit 6 at 2-6.  As noted by the post-conviction court, there was no misconduct.  *Id.*, Exhibit 15 at 22.

Trial Court Error

Comber's first claim of trial court error focuses on the prosecutor's unsuccessful attempt to admit evidence at sentencing concerning charges faced by co-defendants Ashford and Epps. Document 1 at 7.  As noted above, the evidence was not admitted.  No error exists.

Comber also contends the trial court erred in denying his motion to suppress his statement to the police on the ground that the statement was the "fruit [s] of an illegal arrest." Document 1 at 7-8, Grounds 5-7.  The Fourth Amendment issue presented in this claim -- that

the suppression hearing court erred in denying his motion to suppress -- is not cognizable here.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that "when the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an un-constitutional search and seizure was introduced at his trial.   *Id*., 428 U.S. at 494 (footnotes omitted).   Both the suppression hearing court and the Maryland Court of Special Appeals exhaustively examined this Fourth Amendment claim,  and properly applied the facts to clearly established Supreme Court precedent.  Nothing else is constitutionally required.

Finally, Comber complains that the trial court did not give his proposed instruction on aiding and abetting: "give an example if your friend goes to the bank, and you drive and he goes in and you didn't conspire to do anything to commit the robbery, then you're not guilty of anything if you don't know what he was going to do."  Document 11, Exhibit 1 at 8, Ground 7 and Exhibit 9 at 9.   Comber does not allege that the given instruction misstated the law, but asserts that his proposed instruction should have been given.   As the Court of Special Appeals held, the instruction provided was sufficient:

> Based on the trial court's initial instructions that liability as an aider and abettor requires proof of presence at the scene of the crime as well as willful participation in it with the intent to make a crime succeed, we perceive no error in the trial court's refusing to add appellant's proposed example.
>
> Moreover, the trial court did not err in rejecting appellant's example, since, following appellant's request, and in response to additional questions from the jury, the trial court had given supplement instructions regarding aiding and abetting, and informed the jury that liability as an aider and abettor requires the accomplice to "be present and either commit some act or communicate in some way his or her approval or presence to commit the act if necessary, presence to aid the principle in the 1st degree if necessary."  Also, in response to a question from the jury foreman, the jurors were instructed that if the accused was not the actual shooter, it would be necessary for the jury to find that the accused "communicated in some way, by acting or being prepared to act if called upon to act, his approval of the crime" in order to be found guilty

14

as an aider and abettor, and that for accomplice liability "simply being present there is not sufficient."

In sum, we conclude that the trial court did not err in instructing the jury regarding accomplice liability as an aider and abettor, and that the example requested by appellant was sufficiently covered by the instructions already given. Hence, there was no error.

Document 11, Exhibit 9 at 11-12. The instructions given were proper and covered the content proffered by defense counsel. There is no basis for relief under 28 U.S.C. § 2254(d). The evidence, outlined above, supports the jury's finding that Comber aided and abetted his co-defendants.

Certificate of Appealability

A habeas petitioner has no absolute entitlement to appeal a district court's denial of his motion. *See* 28 U.S.C. § 2253(c) (1). "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at §2253(c) (2). The defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282, (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36, (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983).

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.' " *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack*, 529 U.S. at 484 (2000)).

The Court will not issue a Certificate of Appealability because Comber has not made the

requisite showing.  Denial of a certificate of appealability does not prevent Comber from seeking

permission to file a successive petition or pursuing his claims upon receipt of that permission.


Date: <u>December 8, 2009</u>                 _____/s/_____
                                             William D. Quarles, Jr.
                                             United States District Judge